HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DARRON WELSON,

        Plaintiff,

   v.

CAROLYN W. COLVIN,

        Defendant.

CASE NO. C13-5602RAJ

ORDER

## I. INTRODUCTION

    This matter comes before the court on the Report and Recommendation ("R&R") (Dkt. # 17) of the Honorable Mary Alice Theiler, United States Magistrate Judge. The R&R recommends that the court affirm the decision of an administrative law judge ("ALJ") and dismiss Plaintiff Darron Welson's appeal of the refusal of the Social Security Administration ("SSA") to award him disability insurance benefits. Mr. Spencer has objected (Dkt. # 18) to the R&R, and the SSA has responded. The court has considered his objections, the briefs the parties submitted to Judge Theiler, and the Administrative Record ("AR"). For the reasons stated below, the court declines to adopt

ORDER- 1

the R&R, REVERSES the ALJ's decision, and REMANDS this matter to the SSA for proceedings consistent with this order.

## II. BACKGROUND

Plaintiff was born in 1966. AR 48. He completed the eleventh grade of high school and obtained his GED. AR 55. Plaintiff's past relevant work experience includes a maintenance supervisor, maintenance repairer, and equipment installer. AR 74, 178. Plaintiff filed an application for disability insurance benefits in December 2009 and an SSI application in September 2011, alleging a disability onset of December 15, 2005. AR 17, 48, 160-61, 174. Plaintiff claims that he became unable to work due to bulging discs in his back, nerve damage in his left leg, major depressive disorder, and chronic pain. AR 174. Since that time, plaintiff has been treated for back and lower extremity pain, as well as depression and pain disorder.

ALJ Robert Kinglsey held a hearing on February 28, 2012, taking testimony from plaintiff and a vocational expert. AR 42-79. On April 26, 2012, the ALJ rendered a decision finding plaintiff not disabled. AR 17-35. Plaintiff timely appealed, and the Appeals Council denied plaintiff's request for review on June 3, 2013, making the ALJ's decision the final decision of the Commissioner. AR 1-4. Plaintiff appealed this final decision of the Commissioner to this court.

## III. ANALYSIS

**A. Standard of Review**

The R&R accurately summarizes the standard of review applicable to the ALJ's decision. Briefly, where "substantial evidence" supports an ALJ's factual finding, the court generally must affirm it. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). In certain circumstances, such as when an ALJ rejects a claimant's testimony about the severity of his impairments, a

ORDER- 2

higher standard applies. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (requiring "specific, cogent reasons" for rejecting claimant's testimony, and "clear and convincing evidence" where there is no evidence of malingering). In particular, when evaluating subjective testimony about pain, an ALJ must follow a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is objective medical evidence of an impairment that would cause some degree of pain. *Id.* at 1036. The ALJ may not reject the claimant's subjective testimony merely because objective medical evidence does not support the degree of pain that the claimant describes. *Id.* Second, if there is an underlying impairment, the ALJ can reject the claimant's testimony only by pointing to evidence of malingering or "specific, clear and convincing reasons" for finding the claimant's testimony incredible. *Id.* The court does not defer to the ALJ's legal conclusions. *Bray*, 554 F.3d at 1222. The court reviews a magistrate judge's R&R de novo. Fed. R. Civ. P. 72(b)(3).

Additionally, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Id.* The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Id.* at 725. If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating doctor's opinion is contradicted, the ALJ can only reject the opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "The ALJ must do more than offer his conclusions. He must set forth his

own interpretations and explain why they, rather than the doctors' [interpretations], are correct." *Id.* Additionally, the ALJ need not discuss all evidence presented, but, rather, must explain why significant probative evidence has been rejected. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

The R&R also accurately summarizes the five-step process for determining whether an applicant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). An applicant is disabled if, for a period of sufficient duration, he can perform neither her past relevant work nor any other substantial gainful activity available in the national economy. In the first step, the applicant must show that he did not engage in substantial gainful activity during a relevant time period. If he did, then he is not disabled. If he did not, then the claimant must show at the second step that he has a "severe impairment" that limits her ability to work. 20 C.F.R. § 404.1520(c). If so, he must show at the third step that over the course of at least a year, her impairment "meets or equals" an impairment listed in applicable regulations. If it does, he is disabled. If not, he must demonstrate at step four that her residual functional capacity ("RFC") is such that he cannot perform her past relevant work. *See* 20 C.F.R. § 404.1520(f) (noting that an applicant who can perform past relevant work is not disabled). If he cannot, then the burden shifts to the SSA to demonstrate that her RFC permits her to perform other jobs that exist in substantial numbers in the national economy. *See Bray*, 554 F.3d at 1223 (describing allocation of burdens in five-step process).

Finally, the court is constrained to review the reasons asserted by the ALJ, and may not affirm the ALJ's decision based on evidence that the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

**B. The ALJ Did Not Give Specific And Legitimate Reasons For Rejecting The Opinion Of Carl Westphal, Ph.D.**

Plaintiff began receiving mental health treatment from Dr. Westphal in April 2010. AR 447-48. On April 14, 2010, Dr. Westphal diagnosed plaintiff with pain

ORDER- 4

disorder with both psychological factors and general medical condition (DSM-IV[1] Code 307.89) and major depression (DSM-IV Code 296.32).  AR 448; *see also* AR 482 (4/26/2010), 484 (5/4/2010), 486 (5/17/2010), 488 (5/31/2010), 490 (6/21/2010), 579 (2/14/2011), 580 (2/1/2011), 582 (1/10/2011), 584 (12/22/2010), 586 (12/3/2010), 588 (11/15/2010), 590 (11/3/2010), 592 (10/19/2010), 594 (9/27/2010), 596 (9/23/2010), 598 (8/26/2010), 600 (8/3/2010).   In July 2010, Dr. Westphal opined that Welson "continues to experience disabling pain, as well as severe related depression" as a result of which he "is not able to work gainfully."  AR 535.  Dr. Westphal also opined that "because of [Welson's] severe physical and emotional difficulties he is likely to be awarded [Social Security disability benefits] on the basis of inability to work."  *Id.*

       The ALJ assigned little weight to Dr. Westphal's opinion "because the degree of physical limitations the claimant possesses is outside of Dr. Westphal's expertise as a psychologist."  AR 30.  However, the ALJ appears to have assumed, without explanation, that Dr. Westphal's opinion was based on a physical impairment, rather than under the DSM-IV diagnostic code 307.89 for pain disorder.  "Under the DSM-IV, 'pain disorder is coded according to the subtype that best characterizes the factors involved in the etiology and maintenance of pain.'"  *Aponte v. Astrue*, Case No. C11-5671-JCC-BAT, 2012 WL 2882988, *4 (W.D. Wash. June 7, 2012) (citing Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 499 (4th Ed. Text Rev. 2000)).  "Subtype 307.89 'is used where both psychological factors and a general medical condition are judged to have important roles in the onset, severity, exacerbation, or maintenance of the pain.  The anatomical site of the pain is usually coded on Axis III.'"  *Id.*

       Here, the ALJ appears to have disregarded Dr. Westphal's prior DSM-IV diagnosis of pain disorder in concluding that the opinion is outside of Dr. Westphal's

---

[1] Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders ("DSM") (Rev. 4th ed. 2000).

expertise. Accordingly, the ALJ erred in discounting Dr. Westphal's opinion as outside his expertise.

The ALJ also discounted Dr. Westphal's opinion because "Dr. Westphal's treatment notes show that the claimant's mental symptoms waxed and waned with situational stressors but overall with treatment his symptoms improved." AR 30. Substantial evidence supports the conclusion that the claimant's mental symptoms waxed and waned with situational stressors. However, brief periods of improved symptoms are not inconsistent with disability. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996) ("Commissioner must evaluate the claimant's 'ability to work on a sustained basis.' . . . Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."). Rather, plaintiff argues that the ALJ's conclusion that Dr. Westphal's treatment notes show that "overall with treatment his symptoms improved" is not supported by substantial evidence and is not a specific and legitimate reason for rejecting Dr. Westphal's opinion of disability.

The ALJ only references three treatment notes that demonstrated improvement after treatment with an anti-depressant or steroid injection. AR 27 (citing 13F/7 (5/31/2010 AR 488), 13F/9 (6/21/2010 AR 490), & 25F/22 (8/3/2010 AR 600)). On May 31, 2010, Dr. Westphal indicated that Plaintiff began Pristique and pain medication, and that plaintiff continued to struggle with poor sleep, severe pain, and pessimism, but that he reported that his mood, "as perceived by both himself and his wife, appear[ed] to be somewhat less depressed since starting the Pristique." AR 488.[2] On June 21, 2010, Dr. Westphal indicated that plaintiff began steroid injections for pain and that his pain reduced and his mood, sleep and energy improved. AR 490. On August 3, 2010, Dr. Westphal indicated that there had been no change in medication, and that plaintiff had

---

[2] Accordingly, although plaintiff's depression may have slightly improved after starting the Pristique, the pain medication did not improve his symptoms.

1   improved pain management due to steroid injections, improved sleep and energy, and
2   decreased severity of depressive symptoms.  AR 600.  On August 26 and September 23,
3   2010, there was no change in medication, and plaintiff still had improvement with pain
4   from the steroid injections, but on September 23, plaintiff was more depressed related to
5   the rejection by Social Security for his benefits.  AR 596, 598.
6           The remaining treatment notes do not support the ALJ's conclusion that overall,
7   plaintiff's symptoms improved with treatment.  On September 27, 2010, Dr. Westphal
8   indicated that Trazadone had been added to his medication, but that plaintiff's mood was
9   moderately to severely anxious and depressed, that he was focused on another rejection
10  of his Social Security claim, and that his pain still prevented him from working.  AR 594.
11  On October 19, 2010, Dr. Westphal indicated that Buproprion had been added to
12  plaintiff's medication, but that plaintiff presented with much more severe anxiety,
13  depression and pain.  AR 592.  On November 3, 2010, there was no change in treatment,
14  but plaintiff continued to complain of significant pain and anxiety with decreased
15  frequency of panic.  AR 590.  On November 15, 2010, the treatment remained the same,
16  but plaintiff continued to experience poor sleep, significant depression, and severe pain.
17  AR 588.  On November 3, 2010, Dr. Westphal indicated that plaintiff's doctor increased
18  Pristique and added valium and a benzodiazepine.  AR 586.  Plaintiff's mood improved,
19  but he still had ongoing and severe pain.  *Id.*  On December 22, 2010, plaintiff's Pristique
20  was lowered due to increased agitation, but he was more depressed and continued to have
21  ongoing pain.  AR 584.  On January 10, 2011, Dr. Westphal indicated that plaintiff's
22  Clonazepam was increased, but plaintiff appeared more agitated and angry, and
23  continued to experience pain.  AR 582.  On February 1, 2011, Dr. Westphal indicated that
24  Lamictal had been added to the treatment, but that plaintiff continued to exhibit severe
25  symptoms of depression, low energy and very poor sleep, and continued to experience
26  pain.  AR 580.  On February 14, 2011, Dr. Westphal indicated that plaintiff's
27

Clonazepam had been increased, but that plaintiff continued to struggle with severe depression, anxiety, and severe pain. AR 579.

Thus, while there may have been brief moments of improvement in some of plaintiff's symptoms due to medication or steroid injections, overall, the treatment notes demonstrate that plaintiff's symptoms did not improve with treatment.

The court also notes that the ALJ only referenced one Global Assessment of Functioning ("GAF") score provided by Dr. Westphal that supported the ALJ's conclusion of non-disability. AR 57. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). Although GAF scores do not directly correlate to a determination that a mental impairment is severe or disabling (65 Fed. Reg. 50746, 50765-66), such scores are relevant evidence of the claimant's ability to function. *Woodsum v. Astrue*, 711 F. Supp.2d 1239, 1255 (W.D. Wash. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1023 n. 8 (8th Cir. 2007)). A GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as an inability to keep a job. *Id.* (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007)). The GAF scores provided by Dr. Westphal appear to be consistent with, and supported by, the corresponding treatment notes and observation for that day. On remand, the ALJ should consider the GAF scores along with Dr. Westphal's treatment notes.[3] If the ALJ chooses to rely on GAF scores above 50 and reject those below, he must provide specific and legitimate reasons for doing so. *Compare* AR 26 (noting GAF of 70 which indicates only mild symptoms to support conclusion that psychotherapy and medication from Dr. Bates

---

[3] The court has disregarded the Administrative Message 13066 that plaintiff attached to his reply brief regarding GAF, which was effective July 22, 2013. Dkt. # 16-1. The ALJ issued its decision on April 26, 2012, and plaintiff has not provided the court with the administrative message that was in effect at that time.

improved plaintiff's symptoms) & 27 (relying on GAF score of 52 which indicates moderate symptoms as consistent with the residual functional capacity) *with* 32 (rejecting GAF scores between 44 and 50 because unclear from the record whether scores are an attempt to rate symptoms or functioning).

Accordingly, substantial evidence does not support the ALJ's conclusion that overall plaintiff's symptoms improved with treatment. The court finds that the ALJ did not give specific and legitimate reasons for rejecting Dr. Westphal's opinion that plaintiff was unable to work.

**C. The ALJ Did Not Give Specific And Legitimate Reasons For Rejecting The Opinion Of Dr. Michael Pearson, M.D.**

Dr. Pearson completed a psychiatric evaluation on plaintiff in February 2011. AR 773-787. Dr. Pearson diagnosed plaintiff with bipolar disorder, anxiety disorder, and chronic pain. AR 782. Dr. Pearson also checked several boxes and provided commentary, including that plaintiff's ability to perform routine tasks was markedly limited because "pain interferes" and that plaintiff is severely limited in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting because he "is clearly in pain, [and] he becomes irritated with questioning." AR 783. However, Dr. Pearson responded that he "cannot tell" what plaintiff is capable of doing despite his impairments. *Id.* Dr. Pearson also opined that it appeared to him that plaintiff's "chronic pain will prevent him from working." AR 784.

The ALJ gave little weight to Dr. Pearson's opinions because he "admitted that he was uncertain about what the claimant's level of functioning was with his impairments." AR 31. While Dr. Pearson may have been uncertain as to plaintiff's level of functioning, he demonstrated no uncertainty with plaintiff's degree of limitation in the areas assessed. Accordingly, rejecting Dr. Pearson's opinion as to plaintiff's degree of limitations because Dr. Pearson was uncertain as to plaintiff's level of functioning is not a specific and legitimate reason. Although an ALJ may discount medical opinion that is

conclusory, in checklist form, and unsupported by objective evidence or supporting rationale, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), the ALJ's rejection of Dr. Pearson's opinion did not rely on any of these reasons. AR 31.

The ALJ also opined that "Dr. Pearson's finding that the claimant had marked limitations in his ability to perform routine tasks was inconsistent with mental status examinations performed by other psychologists[,]" citing Dr. Chalstrom's opinion that claimant was able to perform serial 3's without error and follow three-step commands. AR 31, 438. However, Dr. Chalstrom's opinion with respect to mental status does not conflict with Dr. Pearson's opinions regarding the limitations caused by pain.[4] AR 438, 783. Finally, the ALJ did not provide any other examples of conflicting evidence when it rejected Dr. Pearson's opinions. AR 31. *See Connett*, 340 F.3d at 874 (court is constrained to review the reasons asserted by the ALJ, and may not affirm the ALJ's decision based on evidence that the ALJ did not discuss).

Accordingly, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Pearson's opinion.

**D. The ALJ Did Not Give Specific And Legitimate Reasons For Rejecting The Opinion Of Dr. Debra Sanchez, Ph.D.**

In July 2011, Dr. Sanchez performed a psychological evaluation of plaintiff, and diagnosed him with bipolar disorder, depression, and chronic pain. AR 602-606. Dr. Sanchez opined that plaintiff's reduced energy and interest in activities, panic attacks, social anxiety and poor concentration moderately interfered with work-related activities. AR 603. Specifically, she opined that plaintiff's lack of energy, little interest in activities, daily panic attacks, social isolation, discomfort around others, and difficulty

---

[4] The court notes that Dr. Chalstrom opined that there is "no evidence to suggest that he couldn't get along with supervisors, co-workers, and the public in a work situation, as long as his pain was somewhat under control." AR 439-440. This opinion appears to be consistent with Dr. Pearson where the evidence in the record does not support the conclusion that plaintiff was able to get his pain under control for a sustained period of time.

ORDER- 10

focusing would significantly interfere with his ability to participate in work activities. *Id.* Dr. Sanchez also opined that plaintiff would have marked limitations on his ability to work with the public due to poor concentration, reduced energy, social anxiety and panic attacks. AR 604. Finally, Dr. Sanchez opined that plaintiff is able to perform tasks of daily living for brief periods of time throughout the day, that medication allows him to function for brief periods of time throughout the day, that his functioning is severely limited by pain and depression, each of which exacerbates the other, and that he would need comprehensive treatment for chronic pain to improve his ability to function. AR 605.

The ALJ gave Dr. Sanchez's opinions little weight "because it is not consistent with the claimant's treatment notes, which indicate that, apart from exacerbations due to situational stressors, his symptoms were generally stable." AR 31. The ALJ did not cite to any portion of the record for this conclusion. The court has already addressed Dr. Westphal's treatment notes above, and finds that Dr. Westphal's treatment notes do not provide substantial evidence for the ALJ's conclusion. The Commissioner directs the court to treatment notes from Greater Lakes Mental Health (Dkt. # 15 at 11), which the ALJ discussed in concluding that the claimant had better control of his symptoms with psychiatric medication. AR 28.

On September 1, 2011, Greater Lakes Mental Health assessed plaintiff, diagnosed him with bipolar disorder and panic disorder, and assigned a GAF score of 48. AR 653-54. Plaintiff complained of depression, sleep disturbance, fatigue, and repeated panic attacks. AR 653. The medical provider observed plaintiff rocking his body and standing up due to back pain. AR 642, 647. Plaintiff also reported chronic pain issues. AR 648. On September 27, 2011, plaintiff reported that he did not think his medication was working, and he reported mood swings, depression, lack of energy, poor sleep, nightmares and anxiety. AR 638. Plaintiff had been prescribed 100 mg of Lamictal for at least the prior six months. *Id.* ARNP Holzinger indicated that Lamictal was for mood

1  stabilization and she added Prazosin for the nightmares. *Id.* Plaintiff was assigned a
2  GAF of 48. ARNP Holzinger also noted that Pristiq was not effective, and that Xanax,
3  Valium and Lamictal were moderately effective. *Id.* On October 5, 2011, plaintiff
4  reported that he had a panic attack on the way to session, but that he was able to calm
5  himself down. AR 636. Plaintiff also reported that he was taking the medication and he
6  thought it was working a little. *Id.* The provider observed plaintiff rocking back and
7  forth during the session due to pain. *Id.*
8        On November 2, 2011, plaintiff reported having "a lot of panic attacks" and going
9  to the emergency room for anxiety. AR 630. The provider opined that panic attacks,
10  anxiety and mood instability continue. *Id.* The provider indicated that plaintiff would
11  continue on Lamictal for mood stabilization, would stop Prazosin since plaintiff reported
12  vivid nightmares since starting it, and would start Klonopin for severe anxiety and Xanax
13  for panic and anxiety. *Id.* Plaintiff also rocked back and forth due to pain. AR 629. On
14  November 23, 2011, plaintiff again reported having a lot of panic attacks and going to the
15  emergency room for anxiety. AR 623. The provider indicated that Neurontin (for pain
16  and mood), Klonopin, Xanax, Valium and Lamictal were effective, and that Celexa,
17  Paxil, Effexor, Remeron, Prozac, Wellbutrin and Zoloft were not effective. *Id.*
18        On December 14, 2011, plaintiff reported that he did not use "many of the rescue
19  meds (Xanax) because [he did not] want anyone to think [he was] abusing them or that
20  [he was] a drug abuser." AR 615. However, there is no indication that plaintiff stopped
21  taking any of his other prescribed medication. The provider indicated that plaintiff still
22  experienced continual anxiety, poor sleep, mood instability, and panic attacks. *Id.*
23  Additionally, plaintiff continued to take Lamictal and Klonopin, and the provider
24  indicated that plaintiff would start on Trazadone for sleeplessness and Depakote for mood
25  stabilization. *Id.*
26        Upon review of the treatment notes in detail, the court finds that substantial
27  evidence does not support the ALJ's conclusion that plaintiff's symptoms were generally

stable apart from exacerbations due to situational stressors. Rather, these treatment notes demonstrate that despite constant medication, plaintiff continued to experience panic attacks, anxiety, poor sleep, and mood instability. Again, brief periods of improved symptoms are not inconsistent with disability. *See Lester*, 81 F.3d at 833.

The ALJ also found that the opinion "is inconsistent with the claimant's activities, which include housework, cooking, laundry, and using Facebook." AR 31 (citing 3E, 6E, 6F/3-4). In the portions of the record cited by the ALJ, plaintiff reported that he helps his kids get ready for school and with homework, and does household chores, including making the bed, light vacuuming, putting dishes in the dishwasher, and laundry. AR 181, 183, 197, 199, 438. Plaintiff reports that he has to lie down to rest for approximately two to three hours per day. AR 181, 438. Plaintiff indicates that he used to cook all meals on the stove prior to his injuries and conditions, but now when he prepares meals for himself it consists of sandwiches, frozen or microwave meals, cereal, and top ramen. AR 183, 199.

However, Dr. Sanchez did not opine that plaintiff was unable to perform any tasks of daily living. Rather, she opined that plaintiff is able to perform tasks of daily living for brief periods of time throughout the day and that medication allows him to function for brief periods of time throughout the day. AR 605. It is unclear to the court how claimant's daily activities, which included brief periods of time throughout the day performing tasks of daily living, is inconsistent with Dr. Sanchez's opinion. Although Dr. Sanchez also opined that plaintiff would have marked limitations on his ability to work with the public due to poor concentration, reduced energy, social anxiety and panic attacks and that his functioning is severely limited by pain and depression, each of which exacerbates the other, the ALJ has not explained how plaintiff's ability to perform tasks of daily living for brief periods of time throughout the day conflicts with her opinion of marked limitation on his ability to work with the public.

Accordingly, the ALJ has not provided specific and legitimate reasons for rejecting Dr. Sanchez's opinion, and the reasons are not supported by substantial evidence.

**E. The ALJ Did Not Give Specific And Legitimate Reasons For Rejecting The Opinion Of Dr. Raymond West, M.D.**

On April 13, 2010, Dr. West diagnosed plaintiff with degenerative disk disease of the lumbar spine, depression, and tinnitus. AR 445. Dr. West opined that plaintiff "is able to stand and to walk for up to four hours cumulatively in an eight-hour day providing he is able to take frequent breaks." *Id.* Dr. West also opined that plaintiff "is able to sit in a comfortable chair for up to six hours cumulatively in an eight-hour day providing he is able to move about from time to time." *Id.* Dr. West also opined that plaintiff "is able to lift and carry 25-30 pounds at least occasionally and for at least half a block[, and that he] is able to bend, at least occasionally." *Id.* Finally, Dr. West opined that "[s]quatting, kneeling, crawling, climbing, balancing, pushing, and pulling are probably not indicated and should be reserved for urgent considerations." *Id.*

The ALJ gave "significant weight" to Dr. West's opinion that "claimant could stand and walk for up to 4 hours in an 8-hour day and sit for 6 hours in an 8-hour day as long as he was able to move about from time to time" and that "claimant could lift and carry 25-30 pounds occasionally with additional postural limitations." AR 30. The ALJ did not address Dr. West's opinion (1) that plaintiff be able to take frequent breaks if standing or walking cumulatively for four hours, (2) that plaintiff be able to sit in a comfortable chair for the six of the eight hours, and (3) that pushing and pulling are probably not indicated and should be reserved for urgent considerations. *Id.*

An ALJ must either accept the opinions of claimant's treating physicians or give specific and legitimate reasons for rejecting them. *Embrey v. Bowen*, 849 F.2d 418, 422 n.3 (9th Cir. 1988). An ALJ cannot avoid this requirement simply by not mentioning the

treating physician's opinion and making findings contrary to it. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007).

Here, it is unclear to the court whether the ALJ accepted the remainder of Dr. West's opinion or rejected it. Additionally, hypothetical questions posed to a vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey*, 849 F.2d at 422. However, the hypothetical situations provided to the vocational expert does not contain all of Dr. West's limitations. AR 74-78.

The ALJ erred in not addressing whether he accepted all of Dr. West's opinions, or whether he rejected some of them. The result of the ALJ's clarification will also affect the hypothetical questions posed to the vocational expert. Accordingly, the court finds that remand is appropriate here to further develop the record.

## IV. CONCLUSION

For all the foregoing reasons, the court DECLINES to adopt the R&R, REVERSES and REMANDS this case for further consideration of the evidence discussed above, and new findings beginning at step two of the sequential evaluation process.

Dated this 30th day of June 2014.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge